United States Courts
Southern District of Texas
FILED

**NOV 05 2015**

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | **Criminal No.** |
| v. | § | |
| | § | **UNDER SEAL** **15 CR 591** |
| EBONG TILONG, | § | |
| MARIE NEBA, | § | |
| DAISY CARTER, and | § | |
| CONNIE RAY ISLAND, | § | |
| | § | |
| Defendants. | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1.      The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.      "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a HHA based on claims submitted to the

Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4.     Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5.     The Medicare program paid for home health services only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a.  the patient was confined to the home, also referred to as homebound;

    b.  the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC"); and

    c.  the determining physician signed a certification statement specifying that:

        i.  the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii.  the beneficiary was confined to the home;

        iii.  a POC for furnishing services was established and periodically reviewed; and

        iv.  the services were furnished while the beneficiary was under the care of the physician who established the POC.

6.     Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

7.     These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the HHA.

8.     Fiango Home Healthcare Inc. ("Fiango") was a Texas corporation doing business at 10101 Fondren Road, Suite 224, Houston, Texas. Fiango submitted claims to Medicare for home health services.

9.     Defendant **EBONG TILONG**, a resident of Fort Bend County, Texas, was an owner, Chief Executive Officer, and director of Fiango.

10.     Defendant **MARIE NEBA**, a resident of Fort Bend County, Texas, was an owner, director of nursing, and officer of Fiango. Defendant **MARIE NEBA** was a registered nurse.

11.     Defendant **DAISY CARTER**, a resident of Wharton County, Texas, was a patient recruiter for Fiango.

12.     Defendant **CONNIE RAY ISLAND**, a resident of Harris County, Texas, was a patient recruiter for Fiango.

13.     Physician 1 is a resident of Harris County, Texas. Fiango paid Physician 1 to sign documents certifying that Medicare beneficiaries qualified for home health services.

## COUNT 1
### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

14.    Paragraphs 1 through 13 are re-alleged and incorporated by reference as if fully set forth herein.

15.    From in or around February 2006 through in or around June 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**EBONG TILONG,**
**MARIE NEBA,**
**DAISY CARTER,** and
**CONNIE RAY ISLAND**

did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items, and services.

### Purpose of the Conspiracy

16.    It was a purpose of the conspiracy for defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER, CONNIE RAY ISLAND**, and others known and unknown to the grand jury to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare, (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud, and (c) diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

## Manner and Means of the Conspiracy

The manner and means by which defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER, CONNIE RAY ISLAND,** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

17.     Defendants **EBONG TILONG** and **MARIE NEBA** maintained a Medicare provider number for Fiango, which they used to submit claims to Medicare for home health services that were not medically necessary or not provided.

18.     Defendants **EBONG TILONG** and **MARIE NEBA** paid illegal kickbacks to physicians in exchange for authorizing medically unnecessary home health services for Medicare beneficiaries for whom defendants **EBONG TILONG** and **MARIE NEBA** submitted claims to Medicare.

19.     Using the money that Medicare paid for home health services that were medically unnecessary or not provided, defendants **EBONG TILONG** and **MARIE NEBA** paid illegal kickbacks to defendants **DAISY CARTER** and **CONNIE RAY ISLAND** and others known and unknown to the grand jury for referring Medicare beneficiaries to Fiango for home health services.

20.     Defendants **DAISY CARTER** and **CONNIE RAY ISLAND** referred Medicare beneficiaries to Fiango even though they did not qualify for home health services under Medicare.

21.     Using the money that Medicare paid Fiango for home health services that were medically unnecessary or not provided, defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER,** and **CONNIE RAY ISLAND** paid illegal kickbacks to Medicare beneficiaries in exchange for allowing Fiango to use their Medicare information to bill for home health services that were not medically necessary or not provided.

22. Defendant **MARIE NEBA** signed medical records falsely representing that Medicare beneficiaries qualified for and received home health services, when they actually did not qualify for home health services under Medicare and did not receive such services.

23. From in or around February 2006 to in or around June 2015, defendants **EBONG TILONG** and **MARIE NEBA** submitted and caused to be submitted approximately $10 million in claims to Medicare for home health services purportedly provided by Fiango. Medicare paid approximately $13 million on those claims.

24. After Medicare deposited payments into Fiango's bank accounts, defendants **EBONG TILONG** and **MARIE NEBA** transferred proceeds of the fraud to defendants **DAISY CARTER, CONNIE RAY ISLAND**, themselves, and their other co-conspirators.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
### Healthcare Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

25. Paragraphs 1 through 13 and 15 through 24 are re-alleged and incorporated by reference as if fully set forth herein.

26. On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**EBONG TILONG,**
**MARIE NEBA,**
**DAISY CARTER, and**
**CONNIE RAY ISLAND**

aided and abetted by, and aiding and abetting, each other and others known and unknown to the Grand Jury, in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code,

Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, as set forth below:

| Count | Defendants | Medicare Beneficiary | On or About Start of Care Date | On or About Payment Date | Approximate Medicare Payment |
|---|---|---|---|---|---|
| 2 | EBONG TILONG and MARIE NEBA | S.C. | February 14, 2013 | May 29, 2013 | $3,687.86 |
| 3 | EBONG TILONG, MARIE NEBA, and DAISY CARTER | J.H. | November 18, 2014 | May 14, 2015 | $3,813.14 |
| 4 | EBONG TILONG, MARIE NEBA, and CONNIE RAY ISLAND | M.H. | October 1, 2013 | December 26, 2013 | $3,687.86 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 5
### False Statements Relating to Healthcare Matters
### (Violation of 18 U.S.C. §§ 1035 and 2)

27.     Paragraphs 1 through 13 and 15 through 24 are re-alleged and incorporated by reference as if fully set forth herein.

28.     On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, defendant

7

MARIE NEBA

aided and abetted by, and aiding and abetting, others known and unknown to the grand jury,

did knowingly and willfully make materially false, fictitious, and fraudulent statements and

representations, and make and use materially false writings and documents, as set forth

below, knowing the same to contain materially false, fictitious, and fraudulent statements

and entries, in connection with the delivery of and payment for healthcare benefits, items,

and services, and in a matter involving a healthcare benefit program, specifically Medicare:

| Count | Medicare Beneficiary | On or About Start of Care Date | Description | Approximate Medicare Payment |
|-------|----------------------|--------------------------------|-------------|-------------------------------|
| 5 | S.C. | February 14, 2013 | OASIS | $3,687.86 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

## COUNT 6
### Conspiracy to Pay and Receive Healthcare Kickbacks
### (Violation of 18 U.S.C. § 371)

29.    Paragraphs 1 through 13 and 15 through 24 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

30.    From in or around February 2006 through in or around June 2015, the exact dates

being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and

elsewhere, defendants

**EBONG TILONG,**
**MARIE NEBA,**
**DAISY CARTER, and**
**CONNIE RAY ISLAND**

did knowingly and willfully combine, conspire, confederate and agree with each other and others

known and unknown to the grand jury, to commit certain offenses against the United States, that is,

8

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

31. It was a purpose of the conspiracy for defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER, CONNIE RAY ISLAND**, and their co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom Fiango submitted claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER, CONNIE RAY ISLAND**, and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

9

32.     Paragraphs 17 through 24 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

## Overt Acts

33.     In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a.     On or about September 18, 2013, defendant **EBONG TILONG** paid approximately $3,750 to Physician 1 for signing documents certifying that Medicare beneficiaries were eligible to receive home health services from Fiango.

b.     On or about April 8, 2013, defendant **MARIE NEBA** paid approximately $800 for Medicare beneficiary referrals.

c.     On or about January 16, 2013, defendant **EBONG TILONG** paid approximately $3,000 to defendant **DAISY CARTER** for referring Medicare beneficiaries to Fiango for home health services.

d.     On or about November 21, 2011, defendant **EBONG TILONG** paid approximately $2,500 to defendant **CONNIE RAY ISLAND** for referring Medicare beneficiaries to Fiango for home health services.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 7-10

**Payment and Receipt of Healthcare Kickbacks**
**(Violation of 42 U.S.C. § 1320a-7b(b)(1) and (b)(2), 18 U.S.C. § 2)**

34.     Paragraphs 1 through 13, 15 through 24, and 30 through 33 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

35.     On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER**, and **CONNIE RAY ISLAND** as set forth below, aided and abetted by, and aiding and abetting, each other and others known and unknown to the Grand Jury, did knowingly and willfully offer, pay, solicit, and receive remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare as set forth below:

| Count | Defendant(s) | On or About Date | Approximate Amount of Kickback |
|-------|--------------|------------------|-------------------------------|
| 7 | **EBONG TILONG** | September 18, 2013 | $3,750 |
| 8 | **MARIE NEBA** | April 8, 2013 | $800 |
| 9 | **EBONG TILONG** and **DAISY CARTER** | January 16, 2013 | $3,000 |
| 10 | **EBONG TILONG** and **CONNIE RAY ISLAND** | November 21, 2011 | $2,500 |

11

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1) and (b)(2) and Title 18, United States Code, Section 2.

## COUNT 11
### Conspiracy to Commit Laundering of Monetary Instruments
### (18 U.S.C. § 1956(h))

36.    Paragraphs 1 through 13, 15 through 24, and 30 through 35 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

37.    From in or around 2008 to in or around 2015, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendants

**EBONG TILONG,**
**MARIE NEBA,**
**DAISY CARTER, and**
**CONNIE RAY ISLAND**

did willfully and knowingly combine, conspire, and agree with each other and other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

It is further alleged that the specified unlawful activity was to commit healthcare fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

12

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

38.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER**, and **CONNIE RAY ISLAND** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses—approximately $13,294,796.12—is subject to forfeiture.

39.     Defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER**, and **CONNIE RAY ISLAND** are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

40. Defendants **EBONG TILONG, MARIE NEBA, DAISY CARTER**, and **CONNIE RAY ISLAND** are notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendants or their co-conspirators:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

WILLIAM S.W. CHANG
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

14